## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
PAULA VEGGIAN,                 :   Civil Action No. 05-70(NLH)
          Plaintiff,           :
                               :
     v.                        :   OPINION
                               :
CAMDEN BOARD OF EDUCATION,     :
ANNETTE KNOX, FRED REISS,      :
LUIS PAGAN, CAMDEN EDUCATION   :
ASSOCIATION, and               :
CLARALIENE GORDON              :
          Defendants/          :
          Counterclaimants.    :
```

**APPEARANCES:**

Morris G. Smith, Esquire
Law Office of Morris G. Smith
422 W. Browning Road
Collingswood, NJ 08107

> *Attorney for Plaintiff*

Richard L. Goldstein, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin, PA
Woodland Falls Corporate Park
200 Lake Drive East
Suite 300
Cherry Hill, NJ 08002

> *Attorney for Defendants Camden Board of Education, Annette*
> *Knox, Fred Reiss, and Luis Pagan*

Richard A. Friedman, Esquire
Zazzali, Fagella, Nowak, Kleinbaum & Friedman, PC
150 West State Street
Trenton, NJ 08608

> *Attorney for Defendants Camden Education Association and*
> *Claraliene Gordon*

**HILLMAN**, District Judge

This matter has come before the Court on Defendants Camden

Education Association ("CEA") and Claraliene Gordon's motion to

dismiss Plaintiff's claims against them.  For the reasons expressed below, Defendants' motion will be denied.

<u>**BACKGROUND**</u>

This case arises out of Plaintiff's reporting of an alleged grade fixing scheme at Brimm Medical Arts High School ("Brimm") in Camden, New Jersey.  Plaintiff, a certified teacher in the City of Camden School District for 39-years, claims that in the Spring of 2004, when she was performing her duties as a "scheduler" for Brimm, which included printing final report cards, she discovered discrepancies between the computer generated final grade reports and the students' transcripts. Plaintiff reported her discovery to her immediate supervisors. As a result, Plaintiff claims that she was retaliated against by Defendants for reporting the grade altering, which resulted in a hostile work environment, as well as an involuntary transfer and demotion.

Plaintiff originally filed a complaint against Defendants Camden Board of Education ("CBOE"), Annette Knox, Superintendent of the Camden School District, Fred Reiss, Assistant Superintendent for Administration and Support Services of the Camden School District, and Luis Pagan, Assistant Superintendent for the Camden Board of Education, bringing claims pursuant to 42 U.S.C. § 1983 for violations of her First Amendment rights and her Fourteenth Amendment right to due process.  Two years later,

2

Plaintiff was granted leave to amend her complaint to add as
defendants the Camden Education Association ("CEA"), the
collective bargaining unit and representative for educational
employees within the City of Camden Public School District, and
Claraliene Gordon, President of the CEA during the relevant time
period.  Plaintiff has asserted First and Fourteenth Amendment
violations pursuant to § 1983 against the CEA and Gordon, as well
as a claim for breach of the duty of fair representation.
Following the filing of Plaintiff's amended complaint, the CEA
and Gordon moved to dismiss her claims pursuant to Federal Civil
Procedure Rule 12(b)(6), which is now before the Court for
consideration.

<u>**DISCUSSION**</u>

**A.   Motion to Dismiss Standard**

When considering a motion to dismiss a complaint for failure
to state a claim upon which relief can be granted pursuant to
Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded
allegations in the complaint as true and view them in the light
most favorable to the plaintiff.  <u>Evancho v. Fisher</u>, 423 F.3d
347, 351 (3d Cir. 2005).  It is well settled that a pleading is
sufficient if it contains "a short and plain statement of the
claim showing that the pleader is entitled to relief."  Fed. R.
Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is
not necessary to plead evidence, and it is not necessary to plead

3

all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)).  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).   The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.

4

Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group
Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider,
however, "an undisputedly authentic document that a defendant
attaches as an exhibit to a motion to dismiss if the plaintiff's
claims are based on the document."  Pension Benefit Guar. Corp.
v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.
1993).  If any other matters outside the pleadings are presented
to the court, and the court does not exclude those matters, a
Rule 12(b)(6) motion will be treated as a summary judgment motion
pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

   **B.   Analysis**

   In her amended complaint, Plaintiff explains the roles of
the CEA and Gordon in the aftermath of Plaintiff's revelation of
the grade fixing scheme:

- On January 19, 2005, the CEA filed a grievance for Plaintiff
  against Knox and the District for the denial of Plaintiff's
  due process rights because she was not given an opportunity
  to speak to the CBOE prior to being informed on December 14,
  2004 of her transfer and demotion, and she was not provided
  with a "RICE" letter, which requires that Plaintiff be
  provided with three school transfer options.  (Amended
  Compl. ¶¶ 45, 50.)  The CEA grievance was signed by the
  vice-president, Nick Timpanelli.  (Id. ¶ 50.)

- On January, 31, 2005, the CBOE rejected the recommendation
  for Plaintiff's transfer.  (Id. ¶ 51.)

- The next day, on February 1, 2005, a second grievance was
  filed by the CEA, and signed by Gordon, against Knox, Reiss,
  and several others, which questioned a previous involuntary
  transfer of Plaintiff that occurred in 2003.  Plaintiff
  alleges that the grievance "effectively sought the removal
  of Plaintiff from her position as scheduler at Brimm Medical
  Arts H.S., based on the Board's prior misconduct and denial

of Plaintiff's due process rights in her 2003 transfer to Brimm.  The grievance stated that Plaintiff's position as scheduler at Brimm was not posted prior to her obtaining that position in 2003.  Consequently, Plaintiff should not have been assigned to Brimm in 2003."  (Id. ¶ 52.)

- Three days after that, Plaintiff alleges that "in an attempt to circumvent Plaintiff's Due Process rights, Gordon sent Knox a petition, drafted by Marianne Dell and Maureen Lord-Benson and circulated by Lord-Benson, with 31 signatures of fellow Brimm staff members 'expressing concern over the reinstatement of Ms. Paula Veggian in our building.'" Plaintiff alleges that "Gordon was asked to share the petition with Knox, and facilitated communication via facsimile, between CEA representative Lord-Benson, Knox, and legal counsel for the CEA."  (Id. ¶ 53.)

- Plaintiff alleges that prior to Plaintiff's return to Brimm, but after the CBOE rejected Knox's recommendation, Knox, Gordon, Lord-Benson and Dell conspired to remove Plaintiff from Brimm.  (Id.)

In pleading her constitutional violation claims, Plaintiff asserts most of her claims collectively against "Defendants" without specifying which conduct is attributable to the CEA and Gordon.  Essentially, it can be construed from Plaintiff' claims that she is alleging that the CEA and Gordon conspired with the other defendants to violate her First Amendment rights, and that the CEA and Gordon conspired with the other defendants to subject her to a hostile work environment, which "foreclosed her freedom to take advantage of future employment opportunities and which seriously damages her standing in the community of her peers," in violation of her Fourteenth Amendment right to due process.  (Id. ¶ 60, 71.)

Plaintiff's claim for breach of the duty of fair

representation alleges that Gordon was unwilling to sign
Plaintiff's January 19, 2005 grievance, Gordon conspired with
other defendants to have her removed from Brimm, and neither the
CEA nor Gordon has sought to pursue or resolve in full
Plaintiff's January 19, 2005 grievance, and these actions violate
the CEA and Gordon's duty to support Plaintiff's rights.

Defendants argue that Plaintiff's constitutional claims must
be dismissed because they are not state actors and because
Plaintiff has not sufficiently pleaded that they conspired with
the defendant state actors--CBOE, Knox, Reiss and Pagan--to
qualify them as state actors.  Additionally, Defendants argue
that Plaintiff's claim for breach of the duty of fair
representation must be dismissed because Plaintiff has not
properly pleaded that claim.  Plaintiff has opposed their motion.

1.  ***Plaintiff's constitutional claims against CEA and
Gordon***

It is well-established that in order to maintain a § 1983[1]
claim for an alleged constitutional violation, it must be brought
against a "state actor."  <u>National Collegiate Athletic Ass'n v.</u>

---

[1] 42 U.S.C. § 1983 provides,

Every person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State .
. ., subjects, or causes to be subjected, any citizen
of the United States ... to the deprivation of any
rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity or other
proper proceeding for redress . . . .

Tarkanian, 488 U.S. 179, 191 (1988) (citing Monroe v. Pape, 365 U.S. 167, 172 (1961)) ("When Congress enacted § 1983 as the statutory remedy for violations of the Constitution, it specified that the conduct at issue must have occurred 'under color of' state law; thus, liability attaches only to those wrongdoers 'who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.'").  In order to determine whether a private party can be held to have acted under the color of state law, "the question is whether the State was sufficiently involved to treat that decisive conduct as state action." Id.  "'[T]he inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the [private entity] so that the action of the latter may fairly be treated as that of the State itself.'"  Id. at 192 (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974)).

When a plaintiff has alleged that a private party has conspired with a state actor to violate her constitutional rights, that private party can be liable under § 1983.  "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute," because "[t]o act 'under color' of law does not require that the accused be an officer of the State[;] [i]t is enough that he is a willful participant in joint activity with the State

or its agents." <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 152 (1970); <u>Melo v. Hafer</u>, 912 F.2d 628, 638 (3d Cir. 1990).

The CEA and Gordon argue that the time-line of events in this case undermines any claim that they conspired with the state defendants such that they could be considered state actors. Defendants argue that because the CEA filed both the February 1, 2005 grievance regarding Plaintiff's 2003 transfer to Brimm and the February 4, 2005 petition after the CBOE voted to allow Plaintiff to stay at Brimm, "[h]ad the CEA and Gordon intended to conspire with Superintendent Knox to remove plaintiff from her position at Brimm, it is difficult to conceive of a more poorly coordinated, timed and executed alleged concerted effort to effectuate such a conspiracy."  (Def. Br. at 22.)

Defendants are correct that communications sent between the CEA/Gordon and the CBOE after the CBOE vote to reject Plaintiff's transfer cannot form the basis of a conspiracy to alter the CBOE's vote, but that time-line alone does not foreclose Plaintiff's claim that the CEA and Gordon and the state defendants conspired to violate her due process rights from February 1, 2005 onward.[2]  Those communications also do not necessarily foreclose Plaintiff's claim that because Knox's

---

[2]The Court may consider these communications because they are relied upon in, and attached to, Plaintiff's amended complaint.  <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

resolution to remove Plaintiff from Brimm was ultimately rejected by the CBOE, Knox conspired with Gordon and the CEA to find another way to remove Plaintiff from Brimm.

Reviewing Plaintiff's claims as a whole, she has alleged facts sufficient to state a conspiracy between the CEA and Gordon, as CEA president, and Knox[3] such that Gordon and the CEA can be considered as acting under the color of state law for the purposes of § 1983 liability.  Plaintiff claims that Knox recommended that the CBOE remove Plaintiff from her position. Because Knox's recommendation was not followed by the CBOE, Plaintiff claims that Knox then conspired with Gordon and the CEA to find other avenues by which to remove her.  Plaintiff contends that the first avenue was the February 1, 2005 grievance filed by the CEA and Gordon, which Plaintiff claims effectively sought the removal of Plaintiff from her position as scheduler at Brimm. Plaintiff contends that the second avenue by which to remove her from Brimm was the petition signed by her peers and forwarded to Knox by Gordon.  These allegations are sufficient to allege that the CEA and Gordon, in her capacity as CEA president, were willful participants in Knox's violation of Plaintiff's due process and First Amendment rights.

Defendants, however, paint a different picture of the

_____

[3]Defendants do not contend that Knox is not a state actor.

February 1, 2005 grievance and the February 4, 2005 petition.
Defendants argue that the February 1, 2005 grievance was filed as
a class action grievance requesting that the CBOE follow position
posting regulations, and it actually benefitted Plaintiff and all
other class members.  (Id. at 23.)  Defendants characterize this
grievance as simply the CEA's request that the CBOE enforce the
position posting requirements of the parties' contract, and not a
method by which to, again, attempt to remove Plaintiff from
Brimm.  (Id. at 24.)  Further, with regard to the petition,
Defendants characterize it as CEA members merely voicing their
concerns to administrators over recent events at their school
involving Plaintiff.  (Id.)  Perhaps these characterizations may
prove to be accurate, but Defendants' interpretation of the
events surrounding Plaintiff's tenure at Brimm may not be
considered on a motion to dismiss, where the Court must accept
all well-pleaded allegations in the complaint as true and view
them in the light most favorable to Plaintiff.  Indeed, in
weighing a motion to dismiss, the issue is not whether Plaintiff
will ultimately prevail, but whether she is entitled to offer
evidence to support the claim.  Bell Atlantic v. Twombly, 127 S.
Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S.
232, 236 (1974)).  Plaintiff has alleged sufficient facts to be
able to proceed with her claim.

11

2.   *Plaintiff's claim for breach of the duty of fair*
     *representation against Gordon and the CEA*

A union representative has the obligation of fair

representation.  D'Arrigo v. New Jersey State Bd. of Mediation,

574 A.2d 44, 47 (N.J. 1990) (citing Vaca v. Sipes, 386 U.S. 171,

177 (1967)).  The "processing of grievances for all employees in

the unit, [and] the right to do so must always be exercised with

complete good faith, with honesty of purpose and without unfair

discrimination against a dissident employee or group of

employees."  Id. (citiation omitted).  If the labor

representative fails to fulfil this duty, he or she is subject to

the charge of an unfair labor practice under N.J.S.A. 34:13A-

5.4b, or a cause of action in law by the employee.  Id.; see also

Farber v. City of Patterson, 440 F.3d 131, 143 (3d Cir. 2006).[4]

---

[4]Defendants cite decisions by the Public Employment
Relations Commission ("PERC") for the proposition that PERC has
not expanded the duty of a labor representative beyond contract
negotiation, administration, and enforcement.  (Def. Br. at 31.)
The Court is unable to retrieve the PERC cases cited by
Defendants that apparently support this proposition.
Notwithstanding that issue however, even though PERC is the state
agency "statutorily vested with the 'exclusive power' to hear
unfair practices claims under EERA" (Def. Br. at 31), as stated
above, Plaintiff is not precluded from bringing a civil lawsuit
against Defendants.  In an action at law, the New Jersey Supreme
Court, not PERC, is the final authority in interpreting New
Jersey law, and its decisions in that regard are controlling.
Jordan v. Solomon, 166 F. Supp. 2d 134, 138 (D.N.J. 2001); see
also Prunetti v. Mercer County Bd. of Chosen Freeholders, 794
A.2d 278, 321 (N.J. Super. Ct. Law Div. 2001) (stating that
decision of PERC are not biding on the court).  Thus, without any
decision by any New Jersey court holding that the scope of a
labor representative's duties are limited to contract

Plaintiff's allegations against Gordon and the CEA with regard to their breach of their duty of fair representation are as follows:

- Gordon was unwilling to file a grievance on behalf of Plaintiff, and instead it was signed by the union's vice president.  (Amended Compl. ¶ 78.)
- After Plaintiff filed her action against the CBOE, Gordon coordinated communication between and conspired with Knox and others to remove Plaintiff from her position at Brimm. (Id. ¶ 79.)
- Gordon obtained legal advice from CEA counsel regarding the legal ramifications of the CEA-sponsored petition.  (Id. ¶ 79.)
- Neither Gordon nor the CEA sought to fully resolve Plaintiff's January 19, 2005 grievance.  (Id. ¶ 80.)
- Instead of supporting Plaintiff's rights according to their by-laws, Gordon and other CEA representatives coordinated efforts to remove her from her position as schedule at Brimm.  (Id. ¶ 81.)
- Gordon's breach of her duty of fair representation occurred prior to and after the CBOE voted to reject Knox's recommendation to involuntarily transfer Plaintiff. (Id. ¶ 79.)

These allegations are sufficient to state a claim that Gordon and the CEA failed to act in good faith, with honesty of purpose, and without unfair discrimination against Plaintiff. Plaintiff's allegations describe an effort by her union and union representative to negatively impact her employment, in contravention of their duty to protect her rights.  As with Plaintiff's constitutional claims, Defendants present a different

---

negotiation, administration, and enforcement, the Court will not consider this proposition to override the general duty of fair representation.

interpretation of the events described by Plaintiff.  But, again, Defendants' interpretation cannot be considered on a motion to dismiss.  At this pleading stage, Plaintiff has adequately alleged a claim against Gordon and the CEA for a breach of the duty of fair representation.

## CONCLUSION

Plaintiff's allegations are sufficient to state a claim that Defendants conspired with a state actor to violate Plaintiff's constitutional rights so that Defendants may be liable for claims brought pursuant to 42 U.S.C. § 1983.  Plaintiff's allegations are also sufficient to state a claim for Defendants' breach of the duty of fair representation.  Under the modern federal rules of civil procedure, "it is enough that a complaint put the defendant on notice of the claims against him.  It is the function of discovery to fill in the details, and of trial to establish fully each element of the cause of action." Seville Indus. Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 789-90 (3d Cir. 1984) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1215 (1969)).  Thus, because Plaintiff has sufficiently pleaded her claims, and, correspondingly, has put Defendants on notice of her claims, Plaintiff's case against Defendants is entitled to proceed to discovery.  An appropriate Order will issue.

Dated: October 2, 2007                    s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.