## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PAULA VEGGIAN, | : |
|        Plaintiff, | : |
|  | : |
|   v. | : |
|  | : |
| CAMDEN BOARD OF EDUCATION, | : |
| ANNETTE KNOX, FRED REISS, | : |
| LUIS PAGAN, CAMDEN EDUCATION | : |
| ASSOCIATION, and | : |
| CLARALIENE GORDON | : |
|       Defendants/ | : |
|       Counterclaimants. | : |

Civil Action No. 05-70(NLH)

**OPINION**

**APPEARANCES:**

Morris G. Smith, Esquire
Law Office of Morris G. Smith
422 W. Browning Road
Collingswood, NJ 08107
*Attorney for Plaintiff*

Richard L. Goldstein, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin, PA
Woodland Falls Corporate Park
200 Lake Drive East
Suite 300
Cherry Hill, NJ 08002
*Attorney for Defendants Camden Board of Education, Annette Knox,*
*Fred Reiss, and Luis Pagan*

Richard A. Friedman, Esquire
Zazzali, Fagella, Nowak, Kleinbaum & Friedman, PC
150 West State Street
Trenton, NJ 08608
*Attorney for Defendants Camden Education Association and*
*Claraliene Gordon*

**HILLMAN, District Judge**

Before the Court is defendants Camden Board of

Education, Annette Knox, Fred Reiss, and Luis Pagan's ("CBOE" or

"CBOE defendants") motion for summary judgment, defendants Camden

Education Association and Claraliene Gordon's ("CEA" or "CEA defendants") motion for summary judgment, and plaintiff's cross-motion for summary judgment.  For the reasons explained below, the CBOE defendants' motion is granted, the CEA defendants' motion is granted in part and denied in part, and plaintiff's cross-motion is denied.

## I.   **JURISDICTION**

Plaintiff has filed an action pursuant to 42 U.S.C. § 1983 for alleged violations of her First and Fourteenth Amendment rights and, therefore, this Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

## II.   **BACKGROUND**

The facts of this case were set forth in this Court's earlier Opinion deciding the CEA defendants' motion to dismiss. They are repeated here as they also pertain to the pending motions for summary judgment.

This case arises out of plaintiff's reporting of an alleged grade fixing scheme at Brimm Medical Arts High School ("Brimm") in Camden, New Jersey.  Plaintiff, a certified teacher in the City of Camden School District for 39 years, claims that in the Spring of 2004, when she was performing her duties as a "scheduler" for Brimm, which included printing final report cards, she discovered discrepancies between the computer generated final grade reports and the students' transcripts.

Plaintiff reported her discovery to her immediate supervisors. As a result, plaintiff claims that she was retaliated against by defendants for reporting the grade altering, which resulted in a hostile work environment, as well as an involuntary transfer and demotion.

Plaintiff originally filed a complaint against defendants Camden Board of Education, Annette Knox, Superintendent of the Camden School District, Fred Reiss, Assistant Superintendent for Administration and Support Services of the Camden School District, and Luis Pagan, Assistant Superintendent for the Camden Board of Education, bringing claims pursuant to 42 U.S.C. § 1983 for violations of her First Amendment rights and her Fourteenth Amendment right to due process. Two years later, plaintiff was granted leave to amend her complaint to add as defendants the Camden Education Association, the collective bargaining unit and representative for educational employees within the City of Camden Public School District, and Claraliene Gordon, President of the CEA during the relevant time period. In her amended complaint, plaintiff has asserted First and Fourteenth Amendment violations pursuant to § 1983 against all defendants as well as a claim for breach of the duty of fair representation against the CEA and Gordon. Following the filing of plaintiff's amended complaint, the CEA and Gordon moved to dismiss her claims pursuant to Federal Civil Procedure Rule 12(b)(6), which motion was denied by this Court.

Both sets of defendants now move for summary judgment and plaintiff cross moves for summary judgment against the CEA defendants.

### III. <u>DISCUSSION</u>

### A. **Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. <u>Id.</u> In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." <u>Marino v. Industrial Crating Co.</u>, 358 F.3d 241, 247 (3d Cir.

4

2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

**B.   First Amendment**

Plaintiff alleges in her amended complaint that defendants acted to retaliate against her and to prevent her from reporting grade manipulation, political patronage and practices within the CBOE, and that as a result of a series of newspaper

5

articles began to penalize and retaliate against plaintiff for allegedly opposing and speaking out against defendants' actions regarding the grade manipulation.  She also alleges that defendants conspired with certain faculty at Brimm and CEA officials to seek the removal of plaintiff from her position as scheduler by signing a petition opposing her reinstatement at Brimm.

There is no dispute that plaintiff was a public employee.  As a public employee, certain restrictions are placed on plaintiff as concerns her right to exercise her freedom of speech.  See Garcetti v. Ceballos, 547 U.S. 410, 417 (2006) (stating that the long-standing view that a public employee had no right to object to conditions placed upon the terms of employment including restrictions on exercising constitutional rights has been tempered so that "... public employees do not surrender all their First Amendment rights by reason of their employment.").  One exception is when a public employee speaks as a citizen addressing matters of public concern.  Id.  "A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made."  Hill v. Borough of Kutztown,

455 F.3d 225, 242 (3d Cir. 2006) (citing Garcetti, 547 U.S. at
410).  In assessing the government entity's justification, the
focus is on the "importance of the relationship between the
speaker's expressions and employment."  Garcetti, 547 U.S. at
417.  "A government entity has broader discretion to restrict
speech when it acts in its role as employer, but the restrictions
it imposes must be directed at speech that has some potential to
affect the entity's operations."  Id.

     The holding in Garcetti is central to this case.  In
Garcetti, the Supreme Court held "that when public employees make
statements pursuant to their official duties, the employees are
not speaking as citizens for First Amendment purposes, and the
Constitution does not insulate their communications from employer
discipline."  Id. at 421.  Plaintiff argues that her speech
regarding the grade manipulation scheme was a matter of public
concern.  While that may be true, plaintiff does not appear to
have been speaking as a "citizen" but rather as a public employee
pursuant to her official duties as a scheduler at Brimm.  In
Garcetti the Supreme Court found that the public employee,
Ceballos, did not act as a citizen in,

> conducting his daily professional activities,
> such as supervising attorneys, investigating
> charges, and preparing filings. In the same
> way he did not speak as a citizen by writing
> a memo that addressed the proper disposition
> of a pending criminal case.  When he went to
> work and performed the tasks he was paid to

7

> perform, Ceballos acted as a government
> employee.  The fact that his duties sometimes
> required him to speak or write does not mean
> his supervisors were prohibited from
> evaluating his performance.

Id. at 422.

Like Ceballos, plaintiff here was not acting as a citizen.  On May 11, 2004, plaintiff, as part of her employment duties as a scheduler and following the request of her immediate supervisor, then acting vice-principal, Ms. Thurselle Treece, generated grade distribution reports for the first, second and third marking periods for the 2003-04 school year.  Plaintiff was also directed by Ms. Treece to provide an identical set to Ms. Maureen Lord-Benson, a special education teacher at Brimm and CEA representative, which she did.  After reviewing the reports supplied by plaintiff, Ms. Treece expressed concerns to her about their content.  On June 17, 2004, as part of her duties as scheduler, plaintiff had final report cards for the year printed in the school's computer room and also printed the list of students who failed.  At the request of Ms. Treece, plaintiff supplied her with the failure list.  After Joseph Carruth became principal of Brimm, he requested that plaintiff provide him with a student class rank calculation report which plaintiff printed on July 15, 2004.  On July 20, 2004, plaintiff advised Mr. Carruth that two sophomores and one junior did not have sufficient credits to be promoted.

Plaintiff alleges that her activities lead to the discovery that four seniors graduated from Brimm without earning the credits required by state guidelines, a matter of public concern.  All of her activities, however, were performed in response to a direct request from her supervisors or as part of her duties as a scheduler.  As such, she was not acting as a "citizen" for First Amendment purposes, but as a public employee. As a public employee, the Constitution does not insulate her communications from employer discipline.  Id. at 421-422 (stating that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen."); Hill, 455 F.3d at 242 (finding that public employee's First Amendment claim fails because he reported the mayor's conduct and harassing actions to the Borough Counsel "pursuant to his official duties."); Myers v. County of Somerset, 515 F. Supp. 2d 492, (D.N.J. 2007) (finding that public employee's statements made about specific criminal investigations not protected because they were made pursuant to his official duties) (citing Garcetti, 547 U.S. at 417).

Plaintiff does not present argument in opposition to the Garcetti case, but rather, in response to the motion for summary judgment, recasts her argument and states that her filing of this lawsuit on January 7, 2005 and the filing of the

9

grievance by the CEA on her behalf shortly thereafter in response to the letter informing her of her involuntary transfer are "protected activities" under the First Amendment.  She states that articles appearing in the Courier-Post on December 16, 2004 reporting on the grading at Brimm, and on January 8, 2005, commenting on her lawsuit, as well as an article appearing on February 1, 2005 in the Courier-Post reporting on plaintiff's involuntary transfer "serves as the vehicle through which Plaintiff's protected speech impacted Defendants."  Plaintiff also alleges that after she filed her lawsuit and grievance, Ms. Lord-Benson, a CEA representative, drafted a petition on February 3, 2005 calling for the denial of plaintiff's reinstatement at Brimm and circulated it among the faculty at Brimm.  Plaintiff alleges that on January 7, 2005, Knox called Carruth and asked him to relay a message to Lord-Benson asking her to call Knox. Plaintiff states that an inference can be drawn from this exchange that Knox "gave the ok" for Brimm CEA members and Board employees to draft the petition.  The petition was later faxed by Gordon to Knox without the attendant signatures.

Plaintiff relies on <u>Pickering v. Board of Ed.</u>, 391 U.S. 563, 568 (1968) for application of the test to determine whether an employee's interest in her speech outweighs the state's countervailing interest as an employer promoting workplace efficiency and avoiding workplace disruption.  In <u>Pickering</u>, the

Supreme Court stated, "[t]he problem in any case is to arrive at a balance between the interests of the teacher, *as a citizen*, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  Id. at 568 (emphasis added).  As stated above, plaintiff was not acting as a "citizen" but rather was performing her duties as a public employee and, therefore, under Garcetti, her actions do not infringe on the First Amendment. Garcetti, 547 U.S. at 421.[1] ("Underlying our cases has been the premise that while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'")

_____

[1] Even if the Court found that plaintiff was a citizen speaking on matters of public concern, plaintiff fails to make out a First Amendment retaliation claim.  To do so, plaintiff must allege "(1) that [defendants] engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted).  While the filing of a lawsuit or grievance is protected First Amendment activity, see Thomas v. Independence Tp., 463 F.3d 285, 296 (3d Cir. 2006), plaintiff has not offered facts that could show that defendants retaliated against her for filing the lawsuit or grievance.  The December 16, 2004 letter advising her of her involuntary transfer was sent prior to her filing the lawsuit or grievance and so clearly did not deter her from exercising her rights.  The circulation of the petition regarding plaintiff's reinstatement is also not evidence of retaliatory conduct since there is no evidence that plaintiff was deterred from pursuing her lawsuit or grievance, and in fact was successful in remaining in her position at Brimm as a scheduler with no reduction in benefits or pay.

<u>Garcetti</u>, 547 U.S. at 420 (citing <u>Connick v. Myers</u>, 461 U.S. 138, 154 (1983)).  Thus, plaintiff's First Amendment claim must fail.

### C.  Due Process - Property Interest

Plaintiff argues that her due process rights under the Fourteenth Amendment were violated by defendants when she received the involuntary transfer letter, without having previously received a "RICE" letter as required by the collective bargaining agreement ("CBA").  Plaintiff submits that the "RICE" letter provides CEA members with a choice of three schools, a right to counsel, and a right to be heard in the event of an involuntary transfer.  Plaintiff also argues that rather than report to Camden High School on January 3, 2005, as directed in her involuntary transfer letter, she choose to take vacation time believing that she would not be allowed to return to Brimm if she reported for work at Camden High School.  When her vacation time expired, plaintiff states that due to her incapacitation from stress caused by her professional uncertainty, she applied for and received a medical leave of absence.  The Board did not approve the transfer and plaintiff returned to Brimm on February 7, 2005.  Plaintiff alleges that as a tenured employee she was deprived of her position from January 3, 2005 until February 7, 2005.

To the extent that plaintiff is asserting a claim that she has substantive due process protection in her position as a

tenured public employee, that claim fails.  See Nicholas v.
Pennsylvania State University, 227 F.3d 133, 138 (3d Cir. 2000)
(finding no property interest in tenured professorship entitled
to substantive due process protection).  "[T]enured public
employment is a wholly state-created contract right; it bears
little resemblance to other rights and property interests that
have been deemed fundamental under the Constitution."  Id. at 143
("Even if one assumes the existence of a property right ... not
every such right is entitled to the protection of substantive due
process.") (quoting Regents of Univ. of Michigan v. Ewing, 474
U.S. 214, 229 (1985) (Powell, J., concurring)).  Therefore,
plaintiff has no substantive due process claim concerning her
tenured public employment as a scheduler at Brimm.  In addition,
the time that plaintiff took off - from January 3, 2005 until
February 7, 2005 - was time that she requested voluntarily.
Plaintiff suffered no loss in pay or benefits because of it.
Accordingly, plaintiff's substantive due process claim fails.

    With regard to procedural due process protections,
plaintiff's claim also fails.  To establish a violation of her
right to procedural due process, plaintiff must show that a
person acting under color of state law deprived her of a
protected property interest and "that the state procedure for
challenging the deprivation does not satisfy the requirements of
procedural due process."  See DeBlasio v. Zoning Bd., 53 F.3d

13

592, 597 (3d Cir. 1995), overruled on other grounds by United
Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392
(3d Cir. 2003)).  Although plaintiff does highlight some
procedural irregularities, such as the failure to provide the
"RICE" letter, she has not proffered facts that could show that
the grievance procedure did not provide reasonable remedies to
rectify her complaints.  Id.; Miles v. Township of Barnegat, No.
05-1661 (JAP), 2008 WL 89910, at *6 (D.N.J. Jan. 7, 2008)(finding
that New Jersey provided full judicial mechanism in Eminent
Domain Act, through which a property owner may seek to remedy an
alleged taking of their property); Harris v. Herbik, No. 05-279,
2006 WL 3694500, at *10 (W.D. Pa. Dec. 13, 2006) (finding that
grievance system and/or a state law tort suit provides adequate
procedures to satisfy Fourteenth Amendment's procedural due
process guarantee).

        Assuming that all defendants are state actors,[2]
plaintiff has not alleged facts that could show that the
grievance procedure did not provide her with an adequate remedy.
After the CBE filed her grievance, the Board voted not to
transfer plaintiff to Camden High School and she remained a

_____

        [2]  The CBE and Gordon raise the argument that they are not
state actors.  Since we find that plaintiff's § 1983 claims fail
as a matter of law, we need not address this argument.  In any
event, that argument was considered and rejected by this Court in
its October 10, 2007 Opinion denying the CEA defendants' motion
to dismiss.

scheduler at Brimm which was the very relief that she sought.  In this way, not only were the procedures adequate, they gave plaintiff the result she wanted.  Thus, her procedural due process claim fails as well.[3]

### D.   Due Process - Liberty Interest

Plaintiff maintains that she suffered a deprivation of her liberty interest under the stigma-plus test set forth in Hill.  "In the public employment context, the 'stigma-plus' test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest."  Hill 455 F.3d at 236 (citing Codd v. Velger, 429 U.S. 624, 628 (1977)).  "The creation and dissemination of a false and defamatory impression is the

---

[3]  In her cross-motion, plaintiff also challenges the involuntary transfer on July 1, 2003, from her position as scheduler at Camden High School to scheduler at Brimm.  On August 8, 2003 a grievance was filed stating the position had not been posted, that her transfer was disciplinary in nature, and that she had not been given a list of open positions in the school district to which she could list her preference.  She alleges that she went to Brimm because no other choice was given to her and that this grievance has never been rectified.

This argument is somewhat circular because plaintiff also complains that the second involuntary transfer on December 16, 2004 from Brimm back to Camden was illegal and that she filed a second grievance because she wished to stay at Brimm.  In other words, even if the Board gave her three choices, she has maintained that she wants to stay at Brimm, the school where she is currently.  Thus, even if plaintiff is asserting a procedural due process claim with respect to the August 8, 2003 grievance, that claim is dismissed for the reasons cited above.

'stigma,' and the termination is the 'plus.'" Id.[4]  The "stigma"
must be made publicly and be false.  Id. (citations omitted).

Plaintiff states that the petition which denigrated her
reputation as a scheduler and questioned her "understanding and
of the model and purpose" of the school is the "stigma"; and her
deprivation of seeing her January 19, 2005 grievance resolved in
full is the "plus."  She states her grievance was not resolved in
full because she was "never made whole as a result of her being
deprived of a RICE letter, nor receiving the collectively
bargained for three school choices for the illegal involuntary
transfer."  She also states that Knox tried to have her
transferred after she filed her grievance and, therefore the
Board "failed to cease and desist from illegally attempting to
transfer" her in the future.

The Third Circuit has held that termination from
government employment constitutes a sufficient "plus" when, as in
this case, the plaintiff lacks a property interest in retaining
her job.  Id. at 238.  The "plus" prong may also be satisfied
where the plaintiff shows that the stigma imposed by the
defendants' conduct "forecloses his freedom to take advantage of
other employment opportunities."  Machesky v. Hawfield, No. 07-9,

---

    [4]  The remedy noted by the Third Circuit when a deprivation
of liberty occurs is a "name-clearing hearing," but passed on the
issue of whether a plaintiff would be entitled to other remedies.
Id. at 236 n. 15.

16

2008 WL 614819, at *6 (W.D. Pa. Mar. 4, 2008) (citing Mitchell v. Glover, 996 F.2d 164, 167 (7th Cir. 1993) (citing Bd. of Regents v. Roth, 408 U.S. 564, 573 (1972)); Robb v. City of Philadelphia, 733 F.2d 286 (3d Cir. 1984)).  Some districts have found that a demotion in position of public employment and reduction in pay could satisfy the "plus" prong.  See O'Donnell v. Barry, 148 F.3d 1126, 1141 (D.C. Cir. 1998).

        Even if this Court recognized that something less than termination would satisfy the "plus" prong, plaintiff has not cited any case law that holds that this prong is satisfied when a grievance procedure is not "fully resolved" to the plaintiff's satisfaction.  Rather, the case law requires that some form of adverse employment action must be taken such as termination or constructive discharge, or, in some districts, a demotion in position with reduction in pay.  Id.  Here, plaintiff did not suffer any loss of pay, seniority or benefits.  She retained her sought-after position as scheduler at Brimm.  Even if plaintiff did not receive a "RICE" letter, and, assuming for purposes of this motion that the CEA and Knox tried to have plaintiff transferred, the transfer never happened.  Thus, plaintiff has not offered facts that could show that she suffered a deprivation of her liberty interest under the stigma-plus test set forth in Hill and, therefore, this claim fails.

17

### D.   Breach of Duty of Fair Representation Against CEA and Gordon

Plaintiff claims that the CEA and Gordon had a duty to fairly represent its members and that they breached this duty by failing to pursue or resolve in full plaintiff's January 19, 2005 grievance against the school district.[5]   Particularly, she alleges that Gordon refused to sign her grievance and that Gordon conspired with Knox to remove plaintiff from her position at

---

[5]   Although plaintiff does not set forth the particular statute that she is relying in bringing this claim in her complaint, she does rely on Section 301(b) of the Labor Management Relations Act ("LMRA") in her response to the CEA defendants' motion.   Often, a plaintiff will file a claim against the union alleging breach of the duty of fair representation together with a claim against the employer alleging breach of the CBA in what is referred to as a "hybrid" section 301/duty of fair representation suit.   Felice v. Sever, 985 F.2d 1221, 1226 (3d Cir. 1993).   It is referred to as a "hybrid" suit because the claims are "inextricably interdependent" in that "the plaintiff will have to prove that the employer breached the collective bargaining agreement in order to prevail on the breach of duty of fair representation claim against the union, and vice versa." Id. (citing United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 66-67(1981) (Stewart, J., concurring in the judgment); DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 164-65 (1983).   The claims, however, do not have to be brought together and a plaintiff can bring the section 301 claim against the employer or the breach of duty of fair representation claim against the union.   Id. (citing DelCostello, 462 U.S. at 165). "Either claim standing alone can be brought in federal court because each has an independent jurisdictional basis." Id. Regardless, a union's negotiation of a CBA is subject to the duty of fair representation, even if there is no breach of contract action against the employer.   Id. at 1227.   Here, plaintiff asserts a claim of breach of duty of fair representation against the CEA and Gordon, but does not maintain a claim against her employer.

Brimm.

The National Labor Relations Act ("NLRA") permits the "certification of a union as the exclusive bargaining representative 'in respect to rates of pay, wages, hours of employment, or other conditions of employment....'" Felice v. Sever, 985 F.2d 1221, 1226 (3d Cir. 1993) (citing 29 U.S.C. § 159(a) (1988)).[6]  A union that is certified as the exclusive bargaining representative has a correlative duty of fair representation. Id.  "A union only breaches its statutory duty of fair representation when its conduct is 'arbitrary, discriminatory, or in bad faith.'" Roberts v. Newark Public Schools, 232 Fed. Appx. 124, 128-29 (3d Cir. 2007) (citing

---

[6]   29 U.S.C.A. § 159(a), states:

> Representatives designated or selected for
> the purposes of collective bargaining by the
> majority of the employees in a unit
> appropriate for such purposes, shall be the
> exclusive representatives of all the
> employees in such unit for the purposes of
> collective bargaining in respect to rates of
> pay, wages, hours of employment, or other
> conditions of employment: Provided, That any
> individual employee or a group of employees
> shall have the right at any time to present
> grievances to their employer and to have such
> grievances adjusted, without the intervention
> of the bargaining representative, as long as
> the adjustment is not inconsistent with the
> terms of a collective-bargaining contract or
> agreement then in effect: Provided further,
> That the bargaining representative has been
> given opportunity to be present at such
> adjustment.

19

Hendricks v. Edgewater Steel Co., 898 F.2d 385, 388 (3d Cir.
1990) (quoting Vaca v. Sipes, 386 U.S. 171, 190 (1967)).  "A
union, however, 'has broad discretion in its decision whether and
how to pursue an employee's grievance against an employer.'"
Raczkowski v. Empire Kosher Poultry, 185 Fed. Appx. 117, 118 (3d
Cir. 2006) (citing Chauffeurs, Teamsters & Helpers, Local No. 391
v. Terry, 494 U.S. 558, 567-68 (1990)).  An act by the Union is
considered arbitrary if it "can be fairly characterized as so far
outside a wide range of reasonableness that it is wholly
irrational or arbitrary."  Id. (citing Marquez v. Screen Actors
Guild, Inc., 525 U.S. 33, 45 (1998)).  "Even a union decision
that is ultimately wrong is not a breach of its fair
representation duty unless that decision is so unreasonable that
it is 'without rational basis or explanation.'"  Id.

        Here, plaintiff does not allege that the CEA failed to
file her grievance regarding the involuntary transfer.  Even
though Gordon refused to sign the grievance, the grievance was
signed by CEA member Nicholas Timpanelli, the "Grievance Chair"
for the CEA, and filed on January 19, 2005 on her behalf.
Further, as the CEA defendants argue, "[i]n New Jersey, school
employee transfers are not negotiable.  The employer has the
managerial prerogative to transfer school employees
involuntarily, and the majority representative (here the CEA)
cannot preclude such a transfer through the grievance or

arbitration process."  See Ridgefield Park Ed. Ass'n v.
Ridgefield Park Bd. of Ed., 393 A.2d 278, 284 (N.J. 1978)(holding
that negotiated teacher transfers would significantly interfere
with a public employer's discharge of inherent managerial
responsibilities and therefore not a matter as to which
collective negotiation is mandatory).

Plaintiff does not dispute that the CEA could not
negotiate plaintiff's transfer.  Rather, she argues that in
violation of the CBA, the Board did not supply her with a "RICE"
letter which would list three alternate schools and provide her
with an opportunity to be heard.  As explained above, plaintiff
was never transferred, which effectively made the grievance moot.
It is not clear what further relief plaintiff desired to be "made
whole" other than receipt of a "RICE" letter.  That would be
pointless, however, since plaintiff remained in her position as
scheduler at Brimm, the very relief that she sought.  Thus, the
Court holds that the CEA did not violate its duty for fair
representation with regard to the filing of the grievance.  See
Roberts, 232 Fed. Appx. at 129 (rejecting plaintiff's fair
representation claim where union sufficiently interviewed Roberts
and investigated claim so that union's handling of claim was
competent); Raczkowski, 185 Fed. Appx. at 119 (finding that
union's previous failure to use the grievance or arbitration
processes did not show arbitrariness because there was no

evidence that it had abused its considerable discretion in doing so).

The petition circulated for signatures by CEA representatives presents a separate issue of whether the CEA breached their duty of fair representation.  Plaintiff has produced evidence that could show that CEA member Lord-Benson and CEA president Gordon participated in garnering signatures with the intention of blocking plaintiff from resuming her position as scheduler at Brimm.  The petition expresses concern over plaintiff's reinstatement at Brimm believing that her presence causes "confusion," that plaintiff did not have "an understanding of the model and purpose" at Brimm, and her interviews with area newspapers characterized the school as a "hostile work environment."  Plaintiff alleges that the petition was drafted and circulated by CEA member Maureen Lord-Benson, and Lord-Benson has testified that she did have a hand in its content.  It is not disputed that Lord-Benson forwarded the petition to Gordon, who then faxed the petition to CEA's legal counsel on behalf of the CEA members requesting whether serious legal implications could result if sent to the Board.  It is also not disputed that Gordon faxed the petition to Knox without the signatures.  Plaintiff has also presented evidence of Gordon's deposition testimony in which she testified that she would not have supported plaintiff's January 19, 2005 grievance, and her testimony that she wanted

plaintiff transferred from Brimm.

Even though Gordon and the CEA had the same duty to protect and advance the interests of the teachers who signed the petition as they did to protect and advance plaintiff's interest, the above facts create a triable issue as to whether certain CEA members were engaging in conduct contrary to plaintiff's grievance.  Further, even though the CEA argues that the circumstances surrounding the petition were "clearly" not "irrational," it is for a jury to weigh the evidence and decide whether the CEA's conduct was "arbitrary, discriminatory, or in bad faith.'" Roberts, 232 Fed. Appx. at 128-29.  Accordingly, because genuine issues of material fact exist, the CEA defendants' motion for summary judgment as to this portion of the claim for breach of fair representation is denied, and plaintiff's cross-motion for summary judgment as to this portion of the claim is denied.[7]

---

[7]The CEA argues that plaintiff has no damages because she was never transferred or demoted, she never suffered any loss or reduction in pay or benefits, she was never suspended, and she was never brought up on tenure or disciplinary charges.  If a jury finds in plaintiff's favor, however, she may be awarded attorney's fees and costs.  See Ames v. Westinghouse Elec. Corp., 864 F.2d 289, 294 (3d Cir. 1988); see also International Broth. of Elec. Workers v. Foust, 442 U.S. 42, 49 (1979) (stating that in an unfair representation suit, "relief in each case should be fashioned to make the injured employee whole").  Further, for successful breach of the duty of fair representation claims, some courts have allowed the award of emotional distress damages where there is evidence of "extreme" conduct.  See Cantrell v. International Broth. of Elec. Workers, Local 2021, 32 F.3d 465, 468 (10th Cir. 1994) (citing cases).  Punitive damages are

Thus, with regard to the allegation that the CEA did not fully resolve plaintiff's grievance, that part of the claim fails.  However, with regard to the allegation that the CEA and Gordon breached their duty fair representation by petitioning to have her transferred, plaintiff has raised a genuine issue of material fact regarding whether that CEA's actions were arbitrary, discriminatory, or in bad faith.

### E.   Individual Liability of Gordon

Plaintiff seeks to hold Gordon individually liable for refusing to sign her petition and for circulating a petition to block plaintiff from being reinstated at Brimm after the Board voted not to transfer her to Camden High School.

The CEA defendants argue that since Gordon acted at all relevant times in her capacity as president of the CEA, that she is immune from liability.  Defendants argue that LMRA § 301, 29 U.S.C. § 185 provides Gordon with immunity from individual liability.  That provision states in relevant part,

> Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any

prohibited.  Foust, 442 U.S. at 50.

individual member or his assets.

29 U.S.C. § 185(b).

While plaintiff does not dispute the language of section 301(b), she states that "Congress could not have intended to insulate union officials from individual liability when their conduct, as Gordon's does in this case, rises to this level of egregiousness and maliciousness."  Plaintiff does not cite to any authority for this interpretation of the statute, and the case law suggests otherwise.  In Felice, the Third Circuit held that not only does the "literal language of this section ... exempt[] union agents and members from personal liability for judgments against the union," but that the Supreme Court in Atkinson v. Sinclair Refining Co., 370 U.S. 238 (1962), "gave the statute a broader reading" in that "[t]he purpose of section 301(b)... was to ensure that 'only the union was to be made to respond for union wrongs, and that the union members were not to be subject to levy.'" Felice, 985 F.2d at 1230; see also Link v. Rhodes, No. 06-0386, 2006 WL 1348424, at *11 (N.D. Cal. May 17, 2006) ("a duty of fair representation claim is not cognizable against individual union officials.").

One district court addressed this very issue and also concluded that union representatives should not be held liable in their individual capacity for actions done on behalf of the union.  Wickham v. Ford Motor Co., 309 F. Supp. 2d 944, 950 (E.D.

25

Mich. 2004).  In Wickham, the court relied on the Supreme Court's

decision in Complete Auto Transit, Inc. v. Reis, 451 U.S. 401,

417 (1981) where the Supreme Court prohibited individual union

members from being held individually liable to an employer for

their individual violations of a no-strike provision in a

collective bargaining agreement.  Id.  The court in Wickham found

that even though the Complete Auto case addressed individual

liability in the context of a strike, the Supreme Court's

reasoning behind its holding addressed various reasons for not

holding individual union members liable and relied heavily on

legislative history and policy reasons.  Id.[8] (finding that the

Ninth Circuit also held that "the language of section 301(b) ...

provide[s] a shield for individual union members in suits for

breach of the duty of fair representation .... [and] extends to

---

[8]  In Wickham, the court rejected the plaintiff's argument
that union officials could be individually liable based on the
statement in the decision Hines v. Anchor Motor Freight, Inc.,
424 U.S. 554 (1976) that "[s]ection 301 contemplates suits by and
against individual employees as well as between unions and
employers." Id.  The court explained that the Supreme Court
addressed this sentence in Complete Auto and "... clarified its
scope by stating that section '301 does not contemplate recovery
of damages from individual employees.'" Id.  citing Complete
Auto, 451 U.S. at 415, n. 17 (emphasis in original).  The Wickham
court concluded that Hines does provide authority for a suit for
damages by an individual employee against individual union
representatives, and further that "individual employees" are
distinct from individual union representatives.  Id.  "Since
individual employees cannot be held liable for damages resulting
from their actions, it would seem that a fortiori union
representatives should not be held liable in their individual
capacity for actions done on behalf of the union."  Id.

state tort claims against union officials and members brought in conjunction with a section 301 claim of breach of duty against a union.")(citing <u>Evangelista v. Inlandboatmen's Union</u>, 777 F.2d 1390, 1400 (9th Cir. 1985)).

Defendants argue that Gordon acted at all relevant times in her capacity as president of the CEA and, therefore, is immune from liability.  Plaintiff does not dispute this and provides no legal basis for holding Gordon individually liable. Thus, plaintiff's individual claim against Gordon is dismissed.

F.   **Intentional and Negligent Infliction of Emotional Distress**

The CEA defendants argue in their brief that plaintiff is not entitled to damages for alleged intentional or negligent infliction of emotional distress.  In her response, plaintiff appears to argue that she is entitled to damages for negligent infliction of emotional distress against the union.  What is curious about these arguments is that plaintiff did not assert a claim for either intentional or negligent infliction of emotional distress in her complaint.[9]  Plaintiff cannot later raise new claims in a response to a motion for summary judgment if she failed to plead them in her complaint. <u>See</u> <u>Bell v. City of Philadelphia</u>, 275 Fed. Appx. 157, 160 (3d Cir. 2008) (stating that a plaintiff "may not amend his complaint through arguments

---

[9]  Also, neither of these claims were addressed in the CEA defendants' motion to dismiss.

27

in his brief in opposition to a motion for summary judgment.")
(citations omitted).  Nonetheless, since both the CEA defendants
and plaintiff proceed as if these claims exist, in the interest
of thoroughness, the Court addresses each individually.

Although both parties refer to intentional and
negligent infliction of emotional distress, they do not clearly
delineate between the two.  To state a claim for intentional
infliction of emotional distress, a plaintiff must establish (1)
intentional and outrageous conduct by the defendant; (2)
proximate cause, (2) distress that is severe.  <u>Buckley v. Trenton
Saving Fund Soc.</u>,  544 A.2d 857 (N.J. 1988) (citing M. Minzer,
<u>Damages in Tort Actions</u>, vol. I, § 6.12 at 6-22 (1987)).  To
prove the first prong of an intentional act, "... the defendant
must intend both to do the act and to produce emotional
distress."  <u>Id.</u>  "Liability will also attach when the defendant
acts recklessly in deliberate disregard of a high degree of
probability that emotional distress will follow."  <u>Id.</u>  In
addition, the defendant's conduct must be "extreme and
outrageous."  <u>Id.</u>  "The conduct must be 'so outrageous in
character, and so extreme in degree, as to go beyond all possible
bounds of decency, and to be regarded as atrocious, and utterly
intolerable in a civilized community.'"  <u>Id.</u>

In order to establish a claim for negligent infliction
of emotional distress under New Jersey law, "a plaintiff must

28

prove that defendant's conduct was negligent and proximately caused plaintiff's injuries." <u>Williamson v. Waldman</u>, 696 A.2d 14, 17-18 (N.J. 1997) (citing <u>Decker v. Princeton Packet</u>, 561 A.2d 1122 (N.J. 1989)). "Determining defendant's negligence 'depends on whether defendant owed a duty of care to the plaintiff, which is analyzed in terms of foreseeability.'" <u>Id.</u> (citing <u>Decker</u>, 561 A.2d 1122; <u>Dunphy v. Gregor</u>, 642 A.2d 372 (N.J. 1994)). Likewise, to establish that "... the alleged negligence constitutes the proximate cause of the emotional injury, the emotional distress must be reasonably foreseeable." <u>Id.</u>

The CEA defendants argue that plaintiff's continued employment as scheduler at Brimm is proof that the union's conduct was not egregious and that plaintiff had not suffered legally cognizable emotional distress. Defendants argue that plaintiff sought no medical attention, took no medications, and rejected psychological or psychiatric care as a result of the incidents alleged in her complaint. Further, the CEA defendants state that plaintiff's expert report only refers to alleged harm caused by her employer and does not attribute any harm to the CEA or Gordon's conduct.

Plaintiff responds using a standard for negligent infliction of emotional distress. She states that the CEA owed her a duty and breached that duty by failing to address and resolve plaintiff's 2005 grievance regarding the involuntary

transfer.

Even assuming that any claims for either intentional infliction or negligent infliction of emotional distress exist, they must fail.  First, plaintiff only provides argument in support of a negligent emotional distress claim, so any claim for intentional infliction is dismissed.  Second, her support of an negligent infliction claim rests on the CEA's handling of her grievance, which claim has been found to fail.  Thus, plaintiff has not plead either claim, has not moved for leave of this Court to amend her complaint to add either claim, and, even assuming such claims exist, has not proffered any facts in support of the claims.  Therefore, these claims are without merit.

G.   **Attorneys' Fees**

Plaintiff argues that a prevailing party in a § 1983 case is entitled to attorneys' fees.  Since her § 1983 claims have been dismissed, her request for attorneys' fees on this claim is denied.

Plaintiff also argues that she is entitled to attorneys' fees in connection with her breach of fair representation claim.  See Ames v. Westinghouse Elec. Corp., 864 F.2d 289, 293 (3d Cir. 1988)(finding that an employee could recover as damages from the Union the attorneys' fees incurred in pursuing the section 301 claim against the employer - consequential damages flowing from the Union's alleged breach of

30

its duty of fair representation)(citations omitted).  Plaintiff argues that the CEA would be liable for plaintiff's attorneys' fees incurred as a result of her action against her employer, the CBOE, since those damages would be considered consequential damages flowing from the union's breach of the duty of fair representation.

As discussed above, plaintiff's claims against her employer have been dismissed.  Therefore, any claim for attorney's fees based on consequential damages for pursuing an action against the CBOE is dismissed.[10]

### H.   Punitive Damages

Plaintiff rests her argument for award of punitive damages on her § 1983 claims.  As those claims have been dismissed, her request for relief in the form of punitive damages is also dismissed.

### IV.   CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by defendants Camden Board of Education, Annette

---

[10]This does not mean that attorney's fees could not be assessed as part of plaintiff's damages against the CEA for its own conduct.  See note 7; see also Ames v. Westinghouse Elec. Corp., 864 F.2d 289, 294 (3d Cir. 1988) (ordering the district court to determine under appropriate standards, whether the Union breached its duty to plaintiff, and if it did, "his claim for damages caused by such breach, in the form of reasonable attorneys' fees, separate from the damages he may recover from [plaintiff's employer], must be awarded unless there are other valid defenses").

Knox, Fred Reiss, and Luis Pagan is granted, the motion for summary judgment filed by defendants Camden Education Association and Claraliene Gordon is granted in part and denied in part, and the cross-motion for summary judgment filed by plaintiff is denied.  An Order consistent with this Opinion will be filed.


                        s/ Noel L. Hillman
                     NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

Dated:  February 23, 2009